# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE KIMBROUGH, | 1:11-cv-01410-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 12) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Title II and Title XVI, respectively, of the Social Security Act. 42 U.S.C. §§ 401 *et seq*. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 10.)

**FACTUAL BACKGROUND**

Plaintiff received DIB and SSI benefits since January 13, 1993, based on the impairment of drug and alcohol addiction, but her eligibility ended in December 2006 under the provisions of Public Law 104-121, section 105, which barred payment of benefits when drug or alcohol addiction was material to the finding of disability. (Administrative Record ("AR") 14, 62.)

Plaintiff was born in 1964, has completed a high school education, and previously worked as a drumstick packer at Foster Farms and as a pants presser at Master Craft Cleaners. (AR 26-27, 44-45, 138.) Plaintiff filed applications for DIB and SSI on April 9, 2007, and contends that her ability to work is precluded by facial pain, headaches, and migraines. (AR 28-29,166.)

**A.    Medical Evidence**

In April 2007, Plaintiff was treated at the Sierra Adult Health Care and Regional Medical Center for headaches and athlete's foot. (AR 211-12.) On June 18, 2007, Plaintiff underwent a "computed tomography [("CT")] maxillofacial, without contrast"; it was noted that she had a history of trauma. (AR 224.) The findings of the radiologist included the following:

> The orbits and maxillary sinuses appear unremarkable. Coronal reconstructions demonstrate a small out pouching of the anterior surface of the left orbit which appears to be chronic and there is some body remodeling here indicating that this is not related to the two month old trauma. This may be related to old trauma. This orbital floor pouching is approximately 4 mm in depth. The nasal turbinates, nasal bones and clivus appear unremarkable. The mandible appears intact. Pterygoid plates appear intact. The mastoid air cells appear intact. Views of the nasal bones show some minimally depressed nasal bone fracture.

(AR 224.) The radiologist concluded that there were minimally displaced nasal bone fractures, no acute orbital wall fractures, and an abnormality of the inferior portion of the left orbital floor which the radiologist opined "may be from a remote traumatic event or congenital." (AR 224.)

In July 2007, Plaintiff underwent corrective facial surgery, and was seen for follow-up care for ongoing complaints of facial pain. (AR 17, 46, 237-39, 244.)

On July 13, 2007, Plaintiff was examined by agency physician Abbas Mehdi, M.D., a neurologist. (AR 226-28.) Plaintiff complained of headaches that are caused by pain in the left side of her face. (AR 226.) She stated that she experienced a facial trauma with multiple lacerations 15 years prior, for which she received medical repair. (AR 226.) This trauma caused left facial

weakness or "focal paralysis on the left side of the face, probably secondary to the injury of the facial nerve." (AR 226.) She reported that she initially experienced symptoms of pain, numbness and headaches, which resolved. (AR 226.) Then, two months prior to the examination with Dr. Mehdi, she experienced a head trauma, which produced worsening symptoms, primarily headaches. (AR 226.) Plaintiff indicated that she experienced pain on the left side of her face and head, which occurred "on and off," but was not a daily occurrence. (AR 226.) She stated that she takes medication for migraine headaches, but the medication does not help. (AR 226.) She reported she had been seen by doctors at University Medical Center, and they have advised her of a procedure to repair the facial nerve. (AR 226.) Dr. Mehdi remarked that Plaintiff "clearly indicates that the surgery is regarding a cosmetic procedure where her left facial nerve is being replaced or regenerated to improve the effects on the face which is weak on the left side but dates 15 years back." (AR 226.)

Dr. Mehdi observed that Plaintiff appeared to be a reliable historian, had no obvious pain, and had no difficulty walking, standing, or removing her socks and shoes. (AR 227.) Examination of Plaintiff's cranial nerves revealed a "[p]ositive finding of the left lower face weakness and a small scar which was remote and did not show any significant features except for facial weakness." (AR 228.) Plaintiff had dysesthesias[2] on the cheek area. Further, because of the facial weakness, Plaintiff had difficulty "blowing out her cheek." (AR 228.) Her eyelid muscles were not weak, and Plaintiff's upper face was not weak. (AR 228.) Dr. Mehdi indicates that the "rest of the cranial nerve examination from II-XII were normal." (AR 228.)

Dr. Mehdi provided diagnoses of left partial facial nerve injury and headaches. (AR 228.) He opined that

> [b]ased on the claimant's history and examination, she has no limitations with lifting, carrying, standing, walking or sitting. No exertional imitations. No limitations regarding her use of her hands. She has no limitations with vision, speech or hearing.
>
> She has partial weakness of the left facial nerve which is producing asymmetry of her face and perhaps could be suffering from headaches which may or may not be secondary to the facial nerve injury which is old and chronic.

(AR 228.)

---

[2] Dysesthesia is the distortion of any sense, especially that of touch. *Dorland's Illustrated Medical Dictionary* 584 (31st ed 2007).

3

On July 26, 2007, state agency physician Ernest Wong, M.D., reviewed Plaintiff's medical records and opined that Plaintiff had no exertional limitations; Plaintiff could frequently climb stairs, balance, stoop, kneel, crouch and crawl. (AR 231.) Dr. Wong also opined that Plaintiff had no manipulative, visual, communicative, or environmental limitations other than avoiding concentrated exposure to hazardous machinery and heights. (AR 231-32.)

On October 26, 2007, state agency physician James V. Glaser, M.D., reviewed Plaintiff's medical records and affirmed Dr. Wong's assessment. (AR 245.)

In December 2007, a treating clinician at Sierra opined that Plaintiff was not disabled (AR 252), but in June 2008, Plaintiff was given a temporary three-month disability certification because of facial neuralgia (AR 249).

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration. (AR 65-86, 87-95.) Consequently, on November 8, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 110.) A hearing was held February 5, 2009, before ALJ Michael J. Kopicki. (AR 22-57.)

**1.     Plaintiff's Testimony**

At the hearing, Plaintiff testified that her disability onset date was March 1, 2007. (AR 28.) Plaintiff testified that she currently lives in a Christian group home. (AR 26.) Plaintiff explained that she feels she is disabled because she is not able to do anything without migraine pain, and the left side of her face causes such severe pain that she cannot sit up or walk straight. (AR 28.) The pain on the left side of her face is always present, but when it is "activated" it is really severe. (AR 29.) She can "pretty much deal with [the pain]" if she can hold her head, lie down, and take her medicine. (AR 29.) She experiences severe pain five out of seven days, which is often precipitated by movement, hot or cold weather, someone talking too loudly, or the television. (AR 29.) When the pain becomes especially severe, the only way to alleviate it is to lie very still and take her medication. (AR 29.)

Plaintiff takes Vicodin three to five times per day, but it causes side effects such as dizziness and dry mouth. (AR 30-31, 44.) She also testified that the medication makes walking and standing

difficult and that it does not help at all other than providing relaxation.  (AR 37, 42.)  She does not drive, cook, or perform any cleaning tasks at her group home because her doctor excused her from such activities.  (AR 34-35.)  Her family does her shopping for her, and she spends her day watching television and lying down.  (AR 35.)  Her migraines cause her to experience blurry vision, which precludes driving a car.  (AR 43.)  She rated her pain level at a seven to an eight generally on a scale of one to ten, with ten being the worst, but when it is severe she rates the pain as a ten.  (AR 50.)  She attends church regularly, but she must leave early on many occasions because the services are too loud.  (AR 37, 39.)  She is not a member of any other clubs or organizations.  (AR 37.)

### 2.     Vocational Expert's Testimony

A vocational expert ("VE") also testified at the hearing.  (AR 51-53.)  The VE testified that Plaintiff's past work as a hand packager was considered light and unskilled and her work as a pants presser was classified as light and semiskilled.  (AR 51.)  The ALJ posed several hypothetical scenarios to the VE and inquired whether such a hypothetical person could perform work.

The ALJ asked the VE to consider a person ranging in age from 42 to 44 who has a twelfth grade education and has the same work history as Plaintiff.  (AR 51.)  The ALJ then asked the VE to further assume that such an individual (1) was limited to simple, routine work tasks because of pain and side effects to medication; (2) should not have concentrated exposure to loud noise; and (3) should avoid heights and dangerous machinery as part of any job duties.  (AR 52.)  The VE testified that such a person could not perform Plaintiff's past work, but could perform work including that of a cleaner, Dictionary of Occupational Titles ("DOT") No. 323.687-014; a sorter, DOT No. 529.687-186; and a sales attendant, DOT No. 299.677.010.  (AR 52.)

In a second hypothetical, the ALJ asked the VE to assume a person of the same age and with the same education and work history as Plaintiff who could (1) lift no more than ten pounds; (2) walk no more than a block; (3) stand no longer than 15 minutes; and (4) sit up to an hour before changing positions.  The ALJ also provided that such a person would be subject, up to five days a week at unpredictable times, to episodes of very intense pain that would take the individual off task for an hour or more per workday.  (AR 52-53.)  The VE testified that such an individual could perform no work.  (AR 53.)

Plaintiff's representative also posed a hypothetical to the VE, asking the VE to modify the first hypothetical by the ALJ and assume that such a person would be taken off task at unscheduled times from a half an hour to 45 minutes per day, two times per week. (AR 53.) The VE testified that there was no work that such an individual could perform. (AR 53.)

### 3. The ALJ's Decision

On June 17, 2009, the ALJ issued a decision that found Plaintiff not disabled from March 20, 2007, through the date of the ALJ's decision. (AR 14-20.) Specifically, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since March 20, 2007; (2) has the following severe impairments: left-sided facial neuralgia and headaches; (3) does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the Residual Functional Capacity ("RFC")[3] to work without exertional limitations, but must avoid hazards such as heights or dangerous machinery and concentrated exposure to temperature extremes and loud noises; (5) is unable to perform any past relevant work; but (6) can perform work in the national economy. (AR 14-20.)

On July 29, 2009, Plaintiff sought review of this decision before the Appeals Council. (AR 9-10.) The Appeals Council denied review on June 3, 2011. (AR 5-8.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**C.     Plaintiff's Contentions on Appeal**

On August 17, 2011, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff seeks a reversal of the final decision of the Commissioner asserting that the ALJ erroneously found Plaintiff's lay statements not credible. (Doc. 15.)

///

///

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

Plaintiff argues that the ALJ did not provide clear and convincing reasons for discrediting Plaintiff's testimony regarding the severity and extent of her pain and limitations. (Doc. 15, 8:3-10.) The Commissioner argues that the ALJ properly assessed Plaintiff's credibility, and the ALJ's conclusion is supported by substantial evidence. (Doc. 16, 5:10-8:17.)

**A.   Legal Standard – Credibility**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets

the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**B.     Analysis**

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent Plaintiff alleged symptoms greater than those reflected by the RFC assessment. (AR 18.) In finding Plaintiff's lay statements "not entirely credible," the ALJ reasoned as follows:

> The claimant has testified that her pain symptoms are so severe that she is limited to a narrow range of sedentary exertion. However, her medical treatment consists of routine visits at three-month intervals, and the brief treating notes do not confirm her allegations of chronic severe pain, daily migraine headaches, and ineffective medication. The claimant was not prescribed Vicodin until December 2007; the treatment notes do not reflect the side-effects to which she now testifies; and instead show that Vicodin was effective in controlling her pain symptoms (Exhibit 11F, p. 6). I note that the May 2007 CT scan of the claimant's face showed minimal displacement of the nasal bones; though this was undoubtedly painful, it also reflected a transient condition. At the July 2007 consultative examination Dr. Mehdi noted only that the claimant had some muscle weakness in the lower left facial muscles and dysthesias over the left cheek, consistent with a recent injury (Exhibit 5F). Given these relatively mild findings shortly after the alleged onset date and the lack of documented worsening after treatment began, it is reasonable to find that the claimant is exaggerating the current severity of her symptoms. The claimant's testimony contains inconsistencies which lessen her credibility. She stated that Vicodin was effective; then testified that it did not help her pain, although the treating records show that it was effective. The claimant also testified that she is able to go shopping and go to church, but is unable to do household chores. Following the cessation of her benefits the claimant returned to work, though only one year was

at a level of substantial gainful activity (Exhibit 2D); this enhances her credibility to a limited degree. However, her overall poor work record and her history of illegal drug use lessen her credibility.

(AR 18-19.)

### 1. Objective Medical Evidence

Plaintiff argues that it "appears that the ALJ is rejecting [Plaintiff's] testimony based on a belief that the testimony is not credible because it lacks support in the objective medical evidence," yet such rationale is legally insufficient pursuant to *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). (Doc. 15, 8:11-18.) Moreover, the regulations specifically prohibit rejecting subjective pain testimony solely due to a lack of corroborating objective medical evidence.

The Commissioner responds that the ALJ provided numerous valid reasons for discounting Plaintiff's allegations regarding the extent, persistence, and limiting effect of his symptoms. (Doc. 16, 5:10-8:7.) The ALJ considered not only the lack of corroborating objective medical findings, but also considered Plaintiff's poor work history and inconsistent statements. As such, the ALJ provided legally sufficient reasons supported by substantial evidence to conclude that Plaintiff's pain testimony was not fully credible.

An ALJ does not err in considering a lack of objective medical evidence to support lay testimony as to the degree of a claimant's pain, so long as this is not the sole basis for an adverse credibility finding. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). As set forth in 20 C.F.R. § 404.1529(c)(2), objective medical evidence "is a useful indicator to assist" the agency in making "reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain may have on [a claimant's] ability to work." However, Section 404.1529(c)(2) also provides that the agency will not reject a claimant's statements regarding the intensity and persistence of pain symptoms or who those symptoms affect a claimant's ability to work "solely because the available objective medical evidence does not substantiate [the claimant's] statements."

Here, the ALJ reasoned that the medical records did not confirm Plaintiff's allegations of chronic severe pain, daily migraine headaches, and ineffective medication. The ALJ noted that the May 2007 CT scan showed minimal displacement of a nasal bone, which was a transient condition. (AR 19.) The ALJ noted that Dr. Mehdi found only some muscle weakness in the lower left facial muscles over Plaintiff's left cheek, consistent with a recent injury. The ALJ concluded that, given these relatively mild findings shortly after the alleged onset date and the lack of documented worsening after treatment began, it was reasonable to conclude that Plaintiff was exaggerating the current severity of her symptoms. (AR 18-19.) The ALJ was entitled to consider these mild objective medical findings in making a credibility determination. As noted above, however, objective medical findings that do not corroborate the extent of Plaintiff's pain cannot be the sole reason to reject Plaintiff's lay statements. 20 C.F.R. § 1529(c)(2); *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (holding that ALJ's rejection of pain testimony solely for lack of objective medical evidence corroborating it constituted clear error). Thus, the Court considers the ALJ's other stated reasons for rejecting the full extent of Plaintiff's pain testimony.

### 2.     Inconsistent Statements

The ALJ determined that Plaintiff made several inconsistent statements, which detracted from her credibility. (AR 18-19.) Specifically, the ALJ considered that Plaintiff's treatment notes do not reflect any complaints regarding medication side-effects, yet Plaintiff testified that the Vicodin causes her to experience dizziness and dry mouth and makes walking and standing difficult. (AR 30-31, 37, 42, 44.) In other words, she never mentioned these fairly aggressive side effects to her treating providers or Dr. Mehdi.

She testified at the hearing that the Vicodin did not help her, except to relax (AR 42), yet she told her treating provider that the Vicodin was really helpful (AR 251). These are the types of inconsistencies that an ALJ is entitled to consider when making a credibility determination, and the ALJ did not err in doing so here. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (in making credibility determination, the ALJ may consider inconsistencies or discrepancies in a claimant's statements).

Plaintiff asserts that her statement that Vicodin does not help her should be interpreted to mean that Vicodin was effective in muting her pain but did not stop the pain from spreading. (Doc. 15, 10:11-18.) According to Plaintiff, interpreting her testimony in this manner, the statement is not necessarily inconsistent with Plaintiff's statement to her treating provider that Vicodin "really helps." (AR 251.) Plaintiff testified as follows at the hearing:

| [ALJ]: | Okay.  And if you're just having [facial pain], how much . . . how much help does the Vicodin give you? |
|---|---|
| [Plaintiff]: | None. |
| [ALJ]: | It doesn't help you at all? |
| [Plaintiff]: | Well, it helps me relax – I guess you could say it – but it don't stop it from spreading. |

(AR 42.)

Plaintiff did not testify that the Vicodin "muted" her pain. She testified that it provides no help other than relaxation. (AR 42.) This is inconsistent with her statement to her treating clinician that Vicodin "really helps." (AR 251.) The ALJ was entitled to find these statements inconsistent. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) ("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.").

To the extent that the ALJ reasoned that Plaintiff's statements about her daily activities in shopping and going to church were inconsistent with her statements that she did no household chores at her group home, such reasoning is not supported by substantial evidence. Plaintiff testified that her sister did her shopping for her. (AR 35.) While she testified she attended church regularly (AR 37), this does not appear to be inconsistent with Plaintiff's statement that she performed no household chores because her doctor excused her from such work (AR 34). Although the ALJ was incorrect in noting this as an inconsistency, such an error was harmless due to Plaintiff's other inconsistent statements that the ALJ properly considered in making the credibility determination. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (that some reasons for discrediting claimant's testimony should be properly discounted does not render ALJ's determination invalid so long as that determination is supported by substantial evidence).

12

### 3. Plaintiff's Work History

The ALJ found that Plaintiff's credibility was weakened by her overall poor work record. (AR 19.) The ALJ is entitled to consider Plaintiff's work history in making a credibility determination. *See Thomas*, 278 F.3d at 959 (ALJ properly found poor work history and lack of propensity to work in lifetime negatively affected claimant's credibility regarding her inability to work). In this case, Plaintiff had minimal earnings between 1982 and 1998. (AR 151.) Over the course of 27 years, Plaintiff only performed work in all four quarters in six of those years. (AR 151.) The ALJ was entitled to consider Plaintiff's overall work history in discrediting her statements, and such reasoning was supported by substantial evidence in the record.

### 4. Conservative Treatment

In finding Plaintiff not entirely credible, the ALJ also noted that Plaintiff's treatment includes only routine visits to a physician at three-month intervals. (AR 18.) Despite allegations of pain so severe that she is limited to a narrow range of sedentary exertion, the medical record does not reflect that she was referred to a specialist to assess her symptoms or that she required more frequent medical care that would be expected with allegations of such severe pain and limitation. This was an appropriate credibility consideration. *See Para v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment") (internal quotation marks and citation omitted).

### 5. History of Illegal Drug Use

The ALJ found that Plaintiff's "history of illegal drug use lessen[s] her credibility." (AR 19.) However, the mere fact that Plaintiff has a history of illegal drug use is not a clear and convincing reason to reject her testimony. For example, in *Buck v. Astrue*, the ALJ found the claimant not credible because he had been incarcerated in the past. No. 3:10-cv-05519-KLS, 2011 WL 2600505, at *11 (W.D. Wash. June 28, 2011). In rejecting this as a clear and convincing rationale to discredit the claimant, the court reasoned that "the mere fact that a claimant has been incarcerated or has a criminal history alone is not a sufficient basis upon which to base an adverse credibility determination, given that such reveals nothing about the claimant's honesty or lack thereof." *Id.* This reasoning is convincing.

1   In contrast to *Thomas*, 278 F.3d at 959, where the plaintiff's conflicting statements about her alcohol and drug use supported the ALJ's credibility determination, Plaintiff has not made any inconsistent statements about her past drug use. Rather, her testimony was discounted, at least in part, because she had a history of illegal drug use. (AR 19.) Illegal drug use, standing alone, has no bearing on Plaintiff's credibility. *See Buck*, 2011 WL 2600505, at * 11. To the extent that the ALJ relied on this reasoning as a basis to reject Plaintiff's pain testimony, the ALJ erred. However, because the ALJ offered other clear and convincing reasons to discredit Plaintiff's testimony, such error is harmless. *See Tonapetyan*, 242 F.3d at 1148; *see also Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error is harmless where it is inconsequential to the ALJ's ultimate nondisability determination).

**6.    Conclusion**

The ALJ provided clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's lay testimony regarding her pain. Even to the extent the ALJ considered some evidence erroneously, such error was harmless.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Valerie Kimbrough.

IT IS SO ORDERED.

**Dated:    January 22, 2013**                         /s/ Sheila K. Oberto
                                                    UNITED STATES MAGISTRATE JUDGE